UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FERNANDO HIRSCH MERHEJ and
KARIFER MERCANTILE E AGRICOLA
EIRELI,

                    Plaintiffs,

          vs.

I.C.S. INTERNATIONAL CUSTODY
SYSTEM INC., ABC CORPORATIONS 1-50,
ALEJANDRO GIL, and JOHN DOES 1-50,

                    Defendants.

Index No.  13 CV 0869 (JGK)

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION OF
DEFENDANT ALEJANDRO GIL
TO DISMISS THE COMPLAINT**

---

## THE RELEVANT CLAIMS

"This is another instance of counsel taking a straightforward
breach of contract case and through tortured pleading
attempting to turn it into a RICO claim, with callous disregard
of the damage done to the reputations of the Defendants by
broad claims of fraud and conspiracy that are not supported
by the facts alleged. *Harrell v. Primedia, Inc.,* 2003 WL
21804840 (S.D.N.Y., Martin, J., Aug. 6, 2003)

Plaintiffs, which allege that they are a Brazilian national and a Brazilian

company which own land and property in Brazil, claim that an investment fund named

Universal Mergers Opportunity – I.E.S.L.L.C. ("IES"), located in Montenegro, induced

plaintiffs to enter into a contract to sell some of their property to the investment fund for

$25 million.  According to the complaint, unnamed agents of the investment fund, and a

"Jean Fournier" representing something called "Universal Mergers" (apparently not IES,

see Complaint paragraph 20), induced one or both Plaintiffs to enter into a written

agreement dated March 2012—with a party or parties unknown—which called for the

transfer of some $25,000 in "escrow fees" and $231,000 "to be held as security" for the

investment fund as part of the deal.  Then, "Universal Mergers" sent Plaintiff Merhej an

email with wire transfer instructions to send these deposits to an account maintained for the benefit of defendant I.C.S. International Custody System Inc. ("ICS") at a bank in New York. Plaintiffs did so.  Now the Plaintiffs claim that the purchase agreement was a "fabrication", that the investment fund never intended to carry out the purchase, and, although the language in the complaint is rather opaque, that the proposed purchase was a fraudulent scheme to wrest the "escrow fee" and the funds "to be held as security" from Plaintiffs.[1]

What does all this have to do with Defendant Alejandro Gil, a New York lawyer who is charged in this complaint with being a fraudster and a RICO violator? Well, according to paragraph 17 of the Complaint, Attorney Gil filed a certificate of incorporation for ICS with the Department of State of the State of New York, and used his office address of 501 Madison Avenue, Suite 201, as the address of ICS.  This occurred in April 2011, eleven months before the claimed agreement between Plaintiffs and the investment fund.  The next mention of Attorney Gil comes in paragraph 32 of the complaint, where Plaintiffs allege that on November 27, 2012—eight months after the alleged agreement—"New York counsel for Plaintiff contacted Gil by telephone." The factual allegations of this paragraph are instructive:

> In that conversation, Gil referred to ICS as a "client" and acknowledged the contract with Plaintiffs.  Gil further stated that he "spoke with" ICS and that 'they' [not further identified] acknowledged that money had passed through 'their' escrow account as part of the transaction with Plaintiffs.  When questioned further, Gil said he could give Plaintiffs' counsel no further information, asserting that counsel was improperly asking him about his relations with his clients.

---

[1] While not relevant to this motion, which is addressed to the face of the complaint, Attorney Gil would aver that he has never seen the alleged written agreement, that he has never received any communication from either Plaintiff requesting that any funds be placed in escrow, and that the funds in question were wired not to an escrow account but to a business account maintained by Gil for ICS.

nydocs1-1007741.3

That's it. That's the sum of factual allegations about Attorney Gil.  From this, Plaintiffs have alleged that "Gil was a key player in a sham transaction whereby he and his company ICS would serve as escrow agents for a real estate deal involving Plaintiffs as sellers."  Complaint, paragraph 1.  Based on this, Plaintiffs "file this action against Gil …under the Racketeer Influenced and Corrupt Organizations Act as well as common law claims of fraud and conversion."  Complaint, paragraph 7.

Were these scandalous accusations not embodied in a filed complaint, they would be defamatory *per se.*  For a member of the New York bar to sign a pleading making such serious allegations about another member of the New York bar, apparently out of pique because Attorney Gil refused to violate attorney-client privilege when asked about his client by an attorney preparing to sue, is reprehensible.  This action should be dismissed forthwith, and counsel for Plaintiffs should apologize to Alex Gil for casting such aspersions.

## ARGUMENT

## I.   PLAINTIFF'S COMPLAINT AGAINST ALEJANDRO GIL FOR FRAUD AND RICO VIOLATIONS MUST BE DISMISSED UNDER RULE 9(b).

The complaint herein sets forth four causes of action arising out of claims of fraud, and a fifth cause of action in conversion.  The first four causes of action must be dismissed under Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b) requires that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  This obligation serves several purposes.  Fundamentally, it gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Ross v. A. H. Robins Co., Inc.,* 607 F.2d 545, 557 (2d Cir. 1979) (internal quotation marks omitted).  But additionally,

3

and in cases such as the present one even more importantly, it "safeguards defendants'
reputation and goodwill from improvident charges of wrongdoing." *Ross v. Bolton*, 904
F.2d 819, 823 (2d Cir. 1990). Finally, in some circumstances, the requirements of Rule
9(b) will diminish the possibility that a plaintiff will file groundless fraud allegations
simply as a nuisance to the defendants or to increase the settlement value of a claim.
*See, e.g., Ross v. Bolton, supra at* 823 (Rule 9(b) "serves to inhibit the institution of
strike suits"); *U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251,
1256 (D.C. Cir. 2004) ("Rule 9(b)'s particularity requirement serves several purposes.  It
'discourage[s] the initial of suits brought solely for their nuisance value.'").

   Rule 9(b) was designed to protect defendants from precisely the kind of
vague and baseless complaint filed by Plaintiffs in this case.  Here, there are only a
handful of factual allegations in the entire complaint concerning Attorney Gil.  First,
Plaintiffs allege that Attorney Gil filed a certificate of incorporation for ICS and used his
office address for the address of ICS.  Second, Plaintiffs allege that Attorney Gil had a
phone conversation with Plaintiffs' counsel, in which Gil: 1) stated that ICS was his
client; 2) acknowledged there was a transaction involving Plaintiffs and ICS; and 3)
refused to answer questions put by Plaintiffs that encroached on his relationship with his
client, ICS.  Complaint, paragraph 32.  Based upon these sparse and innocuous facts,
Plaintiffs make the conclusory allegation that "Gil was a key player in a sham
transaction whereby his he and his company ICS would serve as escrow agents for a
real estate deal involving Plaintiffs as sellers."  Complaint, paragraph 1.

   These allegations leave Attorney Gil uninformed about what exactly he
has been accused of that is fraudulent.  None of the factual allegations against Gil,

4

without context, carry even a whiff of fraud. Allegedly, Attorney Gil has registered a corporation for a client, and then represented that client in a real estate transaction. On these facts, with respect to Attorney Gil, Plaintiffs have failed to plead "with particularity the circumstances constituting fraud."

Accusations of fraud and RICO corruption against an attorney have been recognized as extremely damaging to the attorney's reputation, and approach sanctionable conduct. *See, e.g., Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71, 77 (2d Cir. 2000) (attorney was sanctioned for, among other things, "publicly accusing Cinque of fraud without any concrete evidence to support the claim" and "threatening to add a RICO claim").[2] Parties should tread carefully before accusing an attorney of fraud or RICO violations. Given the weakness of Plaintiffs' allegations against Gil, it is difficult to view this complaint as anything more than a shakedown designed to  induce  Attorney Gil to settle a baseless claim or to turn on a client.

The Rule 9(b) pleading requirements are facially applicable to Plaintiffs' causes of action related to common law fraud, and the allegations are insufficiently particular to sustain these pleadings. And courts are even more demanding when applying Rule 9(b) in RICO cases. Wright and Miller, et al., *Federal Practice and Procedure* § 1297 (3d ed.). *See, e.g., Republic of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 382 (E.D.N.Y. 2007) (mail and wire fraud predicate acts under RICO are subject to a heightened pleading standard); *Limpert v. Cambridge Credit Counseling Corp.*, 328 F. Supp. 2d 360, 366 (E.D.N.Y. 2004) *amended on reconsideration in part,* CV 03 5986, 2004 WL 3395347 (E.D.N.Y. Sept. 16, 2004) (allegations of RICO

---

[2]     Such allegations in *Revson,* together with other extreme behavior toward an attorney, was characterized as sinking "as close to the threshold of the gutter as imaginable and still escap[ing] judicial sanction." *Mathias v, Jacob*, 167 F.Supp.2d 606, 624 (S.D.N.Y. 2001).

5

predicate acts found insufficient where none of the individually identified communications were substantively fraudulent); *Qantel Corp. v. Niemuller*, 771 F.Supp. 1361 (S.D.N.Y. 1991) (alleged telephone calls were not sufficiently plead as predicate acts when they did not indicate how many calls were made, the dates they were made, or the content of the communications).

Plaintiffs may respond to this motion with a claim that they need discovery because Attorney Gil's role in the dealings between Plaintiffs and the various players alleged to have been involved on the purchasers' side is not something they can have knowledge about.  Such a request ought to be denied.  True, the courts have recognized that where facts are peculiarly within the opposing party's knowledge the full rigor of Rule 9(b) may be relaxed.  *Wexner v. First Manhattan Co.,*902 F.2d 169, 172 (2d Cir. 1990).  However, "*Wexner* also makes clear that '[t]his exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.  Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard."  *Wood v. Applied Research Associates, Inc.*, 328 Fed.Appx. 744, 2009 WL 2143829, n.1 (2d Cir. 2009).

## II.   PLAINTFFS HAVE NOT ALLEGED A PATTERN OF RACKETEERING WITH RESPECT TO ATTORNEY GIL.

To state a RICO claim, a plaintiff must plead a "pattern of racketeering activity."  18 U.S.C. 1962. A pattern, as defined by statute, consists of at least two acts of racketeering.  18 U.S.C. 1961(5). Here, Plaintiffs' complaint against Gil fails for at least three reasons.  First, as discussed previously, Plaintiffs' allegations of fraud against Gil do not meet the pleading requirements of Rule 9(b).  Second, even if the

allegations in Plaintiffs' complaint were to satisfy Rule 9(b), Plaintiffs have alleged only a single potential predicate act against Gil (the phone conversion with Plaintiffs' counsel). Finally, even if other allegations in the complaint—ostensibly involving acts of other defendants—were to be read  to be directed at Gil, the alleged acts took place over a period of time too short to satisfy the requirement of a continuous pattern of corrupt acts.

## A.    Plaintiffs Have Alleged Only One Potential Predicate Act Against Gil.

The only factual allegation in the complaint directed at Gil that could be considered a predicate act appears at paragraph 32.  There, Plaintiffs allege that Gil received a telephone call from Plaintiffs' counsel; acknowledged that ICS was his client; acknowledged the existence the alleged real estate transaction; and declined to speak further about his attorney-client relationship.  These are the only relevant allegations that name Gil, and they do not even allege a predicate act.

The various other allegations in the complaint, which arguably allege wire fraud, do not involve Gil.  For example, Plaintiffs allege that Merhej received emails from a "Jean Fournier", holding himself out to represent an ICS affiliate called Universal Mergers.  Complaint, paragraph 20.  Yet there is no allegation that Gil has any relationship to Universal Mergers, or that he is, or is somehow related to, "Jean Fournier."  This allegation accuses Gil of nothing, and therefore cannot be a predicate act with respect to Gil.

Similarly, the complaint contains numerous allegations concerning ICS' conduct.  See Complaint, paragraphs 21, 23, 24, 25, and 27.  The allegations in those paragraphs do not claim that Attorney Gil did, or failed to do, anything in relation to Plaintiffs.  Nowhere in the complaint is Gil alleged to be anything other than ICS's

7

lawyer.  The best plaintiffs can do is claim, without any supporting factual allegations, that ICS is "his" company.  Complaint, paragraph 1.  Counsel is not aware of any case in which the mere factual allegation of an attorney – client relationship with a company accused of RICO has ever been pleaded to subject that attorney to a RICO claim, let alone withstood a motion to dismiss.

In other parts of the complaint, Plaintiffs allege vaguely that "Defendants" did this or that.  See, e.g., Complaint, paragraph 26 ("Defendants failed to transfer the purchase price…"); Complaint, paragraph 29 ("Defendants sent numerous emails to Merhej…").  Vague pleadings like these do not satisfy the requirements of Rule 9(b) and they cannot be considered predicate acts of Gil.

Thus, the only allegations against Gil that could remotely be a predicate act by Gil is the telephone call.  However, there is nothing wrongful or illegal alleged related to that phone call.  Even if Plaintiffs are given the benefit of the doubt, and the telephone call is considered a predicate act, it is still only a single act, and thus, cannot alone establish a pattern of racketeering conduct.

## B.    Plaintiffs Have Not Alleged a Continuous Pattern of Racketeering Activity.

Though a pattern requires at least two predicate acts, the Supreme Court has held that "while two acts are necessary, they may not be sufficient" to establish a pattern. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985).[3]  Further, to prove a pattern of racketeering activity, a plaintiff must show that the alleged racketeering activities are related and that they pose a threat of continued criminal

---

[3]    Presumably, the "predicate acts" in this complaint are the emails and telephonic communications listed in paragraph 36 of the Complaint.  As pointed out above, Attorney Gil is not alleged to be a party to any emails and only to one telephone conversation.

8

activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). In this case, even if it is assumed that Plaintiffs have alleged at least two predicate acts, Plaintiffs have, nevertheless, failed to plead facts sufficient to meet the continuity requirement.

According to the Supreme Court, continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.*, at 241-42. Here, Plaintiffs have not alleged facts suggesting that Gil's conduct projects into the future or that there is any threat of it being repeated. Thus, Plaintiffs must be basing their claims on a "closed-ended" theory of continuity. Under a closed-ended theory, a "party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement..." *Id.*, at 241-42.

Note that the predicate acts must extend over a "substantial" period of time. In the instant case, all the acts alleged by Plaintiffs—assuming but certainly not conceding that all the alleged acts may be attributed to Gil—occurred between February and November 2012. Complaint, paragraph 18; Complaint, paragraph 32. That is, all of the alleged conduct took place within 10 months. Case law establishes that such a short amount of time is insufficient to constitute closed-ended continuity.

Continuity is rarely found where the allegations are restricted to a single scheme to defraud a single plaintiff. *See, e.g., Richardson Greenshields of Canada Ltd. v. Patel*, 643 F.Supp. 672 (S.D.N.Y. 1986) (allegations of mail and wire fraud as

predicate acts were insufficient to support a pattern where they were in furtherance of a single scheme to defraud plaintiff); *Giannacopolous v. Credit Suisse*, 965 F.Supp. 549, 552 (S.D.N.Y. 1997) (allegations of fraud involving a single perpetrator, a single victim, and single scheme, conducted over three months did not establish a closed-ended pattern); *D'Orange v. Feely*, 877 F.Supp. 152, 158 (S.D.N.Y. 1995) (predicate acts against single victim over a five-month period did not sufficiently allege closed-ended continuity). As in the latter two cases, here Plaintiffs allege a single real estate scheme designed to defraud a single plaintiff in a single transaction, and the scheme allegedly took place over only a few months. Such allegations do not amount to the requisite pattern of continuity.

By contrast, when closed-ended continuity is found, it typically involves much longer periods. *See, e.g., Pahmer v. Greenberg*, 926 F.Supp. 287, 301 (E.D.N.Y. 1996) *aff'd sub nom. Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) (activities spanned nearly five years); *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989) (predicate acts occurred over a period of eight years); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) (predicate acts spanned approximately 2 years). The allegations in this case are just not in this range. Thus, there is no closed-ended continuity.

## III. THE CAUSE OF ACTION FOR CONVERSION FAILS TO STATE ANY CLAIMS AGAINST DEFENDANT GIL, AND THEREFORE MUST BE DISMISSED UNDER RULE 12(B)(6)

The cause of action for conversion, although captioned as "Against All Defendants", makes no allegations against Attorney Gil. Rather, in this claim Plaintiffs allege that ICS received certain funds from Plaintiffs, has refused to return the funds to

Plaintiffs, and distributed the funds to "ABC Corporations 1-50 and John Does 1-50)."[4]

Complaint, paragraphs 56-63.

There being no claim that Attorney Gil either received or retained the

funds, the fifth cause of action must be dismissed as against Gil.

## CONCLUSION

This case ought never to have been brought, at least against Alejandro

Gil. While he may never fully recover from the sullying of his reputation that Plaintiffs

have caused, this Court should do what Judge Martin did in *Harrell v. Primedia, Inc.*,

*supra*, and dismiss the complaint against Attorney Gil with a severe reprimand against

Plaintiffs for having misused the process of the Courts.

Dated:   April 19, 2013

By:   /s/_____
          JEFFREY E. GLEN

          ANDERSON KILL & OLICK, P.C.
          1251 Avenue of the Americas
          New York, NY  10020
          Telephone:  212-278-1000

          *Attorneys for: Defendant Alejandro Gil*

Robert Hernandez
Member of the Bar of the State of
 California
Not admitted to this Court
On the papers.

---

[4]      While not relevant because not directed against Attorney Gil, a claim of wrongful distribution of
funds belonging to another is not a claim in conversion.

11