UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

FERNANDO HIRSCH MERHEJ, et al.,                  :

                      Plaintiffs,         :

             - against -                  :

I.C.S. INTERNATIONAL CUSTODY                     :
SYSTEM, INC., et al.,
                           :

                  Defendants.
-----------------------------------------------------------x

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 1/9/14

**REPORT AND**
**RECOMMENDATION**
**TO THE HONORABLE**
**JOHN G. KOELTL**

13 Civ. 869 (JGK) (FM)

**FRANK MAAS**, United States Magistrate Judge.

I.      Introduction

           In this action arising out of a failed real estate transaction, plaintiffs

Fernando Hirsch Merhej ("Merhej") and Karifer Mercantile e Agrícola Eireli ("Karifer"),

(together, the "Plaintiffs"), seek to recover the damages resulting from their posting of an

escrow in the amount of approximately $232,000.  This escrow was intended to ensure

the Plaintiffs' performance of an agreement to sell three properties in Brazil to a third

party not named as a defendant herein for slightly more than $25 million.

           On May 17, 2013, Your Honor determined that the Plaintiffs were entitled

to a default judgment against Defendant I.C.S. International Custody System, Inc.,

("ICS"), and referred the matter to me for an inquest.  (ECF Nos. 21, 22).  For the reasons

set forth below, I now recommend that the Plaintiffs be awarded damages in the amount

of $256,859.95, consisting of the $256,354.75 that they transferred to ICS, plus costs and

expenses in the amount of $505.20.  The Plaintiffs should also be awarded post-judgment interest calculated at the rate set forth in 28 U.S.C. § 1961.

II.    Procedural History

The Plaintiffs filed their complaint in this action on February 6, 2013.  (See ECF No. 1 ("Complaint" or Compl.")).  After the Plaintiffs effected service on ICS on February 11, 2013, (ECF No. 3), ICS failed to answer or appear, (ECF No. 10). Accordingly, the Clerk of the Court entered a Certificate of Default with respect to ICS on April 16, 2013.  (Id.).  Thereafter, on May 7, 2013, Your Honor issued an order directing ICS to show cause why a default judgment should not be entered.  (ECF No. 23).  Pursuant to the order, ICS was directed to file any responsive papers by May 15, and to appear before Your Honor on May 17, 2013.  (Id.).  ICS failed to comply with either deadline.  Accordingly, on May 17, 2013, Your Honor found that the Plaintiffs were entitled to a default judgment against ICS and referred the case to me to conduct an inquest.  (ECF Nos. 21, 22).

By order dated June 14, 2013, I directed the Plaintiffs to serve and file their inquest papers by July 29, and ICS to serve and file any opposition papers by August 12, 2013.  (ECF No. 25).  The Plaintiffs timely complied and later supplemented their papers. (ECF Nos. 27-29, 32).  ICS, however, has submitted no papers despite the passage of more than four months since they were due.

III.    Standard of Review

   In light of ICS' default, the Plaintiffs' well-pleaded allegations concerning issues other than damages must be accepted as true.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

   Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claims through the submission of admissible evidence, the Court need not hold a hearing so long as (a) the Court has determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

   Here, as set forth below, both requirements have been met.  Accordingly, a hearing is unnecessary.

IV.    Relevant Facts

   The uncontested allegations of the Plaintiffs' Complaint establish as follows:

Merhej is a Brazilian national, residing in Sao Paolo, Brazil, who owns Karifer, a Brazilian limited company with offices in that country.  (Compl. ¶ 3).  Through Karifer, Merhej owns various properties in Brazil.  (Id.).

ICS is a "New York company" with an office in Manhattan.  (Id.).

In early 2012, Merhej agreed to sell three properties to an investment fund known as Universal Mergers Opportunity – I.E.S. L.L.C. ("Opportunity") for approximately $25 million.  (Compl. ¶¶ 4, 18-19, 21).  As part of the transaction, the Plaintiffs, as seller, agreed to deposit $231,524 into escrow with ICS "to be held as security for Opportunity . . . in the event the transfer could not be recorded in Brazil." (Compl. ¶ 21).  Additionally, the Plaintiffs agreed to pay ICS $24,830.75 in escrow fees. (Id.).  The Plaintiffs made both payments by mid-April 2012.  (Id. ¶¶ 23-24).

Although ICS provided a series of excuses for Opportunity's failure to complete the transaction, it never returned the escrowed money or the escrow fee.  (Id. ¶¶ 5, 25-31).  Indeed, the Plaintiffs have not heard from ICS since September 18, 2012. (Id. ¶¶ 25-31).

V.  Discussion

A.  Jurisdiction

In their Complaint, the Plaintiffs assert five claims against ICS, alleging (1) a violation of the Racketeer Influenced Corrupt Organization Act ("RICO"), (2) a RICO conspiracy, (3) common law fraud and fraudulent inducement, (4) aiding and abetting fraud, and (5) conversion.  They consequently allege jurisdiction under 28 U.S.C. §§ 1331

and 1332.  (Compl. ¶¶ 14-15).  Since the Plaintiffs are Brazilian and all of the other

defendants named in the complaint are not, (see id. ¶¶ 9-11), the Court has diversity

jurisdiction.[1]   There consequently is no need to address whether federal question

jurisdiction also exists.

     B.   <u>Liability</u>

As set forth below, even though the Plaintiffs have pleaded five separate

claims for relief, only their RICO and fraudulent inducement claims need be considered

to afford them all of the relief to which they are entitled.

     1.   <u>RICO</u>

To establish a substantive claim for relief under RICO, a plaintiff must

plead each of the following seven elements:  "[a] that the defendant [b] through the

commission of two or more acts [c] constituting a 'pattern' [d] of 'racketeering activity'

[e] directly or indirectly invest[ed] in, or maintain[ed] an interest in, or participate[d] in

[f] an 'enterprise' [g] the activities of which affect interstate or foreign commerce."  <u>Moss</u>

<u>v. Morgan Stanley Inc.</u>, 719 F.2d 5, 17 (2d Cir. 1983).  Additionally, the Plaintiff "must

---

[1]    In their Complaint, the Plaintiffs also allege that defendant Alejandro Gil (with whom they evidently have settled), is a New York citizen.  (See Compl. ¶ 12; ECF No. 24).  His citizenship therefore does not destroy diversity jurisdiction.

    The Complaint also names as defendants numerous fictitious entities and individuals ("ABC Corporations 1-50" and "John Does 1-50").  Although the Plaintiffs have not pleaded  the citizenship of any of the fictitious defendants, this should not present any impediment to this Court's exercise of jurisdiction under 28 U.S.C. § 1332.  See, e.g., <u>W. Weber, Co. v. Kosack</u>, No. 96 Civ. 9581 (LMM), 1997 WL 666246, at *2-3 (S.D.N.Y. Oct. 24, 1997) (suggesting that such defendants should be disregarded for jurisdictional purposes); <u>Hitchcock v. Woodside Literary Agency</u>, 15 F. Supp. 2d 246, 251 (E.D.N.Y. 1998) (recommending that such defendants be dismissed to assure complete diversity).

allege that he was 'injured in his business or property <u>by reason of</u> a violation of section 1962.'" <u>Id.</u> (quoting 18 U.S.C. § 1964(c)) (emphasis in original).

To plead a prima facie civil RICO conspiracy claim, a Plaintiff must allege that "a conspirator intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." <u>In re LIBOR-Based Fin. Invs. Antitrust Litig.</u>, 935 F. Supp. 2d 666, 725 (S.D.N.Y. 2013) (quoting <u>Gulf Coast Dev. Grp., LLC v. Lebror</u>, No. 02 Civ. 6949 (NRB), 2003 WL 22871914, at *5 (S.D.N.Y. Dec. 4, 2003) (brackets in original) (internal quotation marks omitted)). However, a corporation cannot conspire with its employees or attorneys. <u>See</u> <u>Walters v. McMahen</u>, 795 F. Supp. 2d 350, 358-59 (D. Md. 2011); <u>Sadighi v. Daghighfekr</u>, 36 F. Supp. 2d 279, 297 (D.S.C. 1999).

Applying these principles here, it is clear that both of the Plaintiffs' RICO claims are insufficient. Turning first to the substantive RICO claim, under what has been termed the "distinctness requirement," the defendant must be a "person" that is separate and distinct from the "enterprise." <u>See</u> <u>Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 120 (2d Cir. 2013) ("As we have long recognized, the plain language and purpose of the statute contemplate that a person violates the statute by conducting an enterprise through a pattern of criminality. It thus follows that a corporate person cannot violate the statute by corrupting itself."). A corporate defendant may, however, be held liable under RICO if it "associates with others to form an enterprise that is sufficiently distinct from itself."

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994).

The Complaint alleges that ICS was a RICO "enterprise." (Compl. ¶ 2). The Plaintiffs, however, have failed to name as a defendant any "person" separate and apart from ICS that could be held liable under RICO. It follows that the allegations of the Complaint do not allege a legally-sufficient substantive RICO claim.

Even if the distinctness requirement did not sound the death knell for the Plaintiffs' substantive RICO claim, in order to prevail the Plaintiffs also would have to allege that the defendants engaged in a "pattern" of racketeering activity related to the alleged enterprise. See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 238-39 (1989). This requires that the Plaintiffs plead that at least two predicate acts of racketeering occurred within a ten-year period. See 18 U.S.C. § 1961(5). Additionally, the Plaintiffs must show that the alleged scheme entailed continuing – or at least the threat of continuing – activity. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14 (1985). Rather than describing a continuing fraud, the Complaint in this action essentially describes a single failed commercial transaction. This is insufficient to satisfy the pattern requirement. See Sedima, 473 U.S. at 496 n.14; First Capital Asset Mgmt. v. Satinwood, 385 F.3d 159, 178-80 (2d Cir. 2004). The Plaintiffs' substantive RICO claim thus fails for want of distinctiveness and a pattern of racketeering activity.

Turning to the alleged RICO conspiracy, the Complaint concedes that "each of the Defendants was associated with or employed by ICS." (Compl. ¶ 40). As a matter

of law, a corporation cannot conspire with itself.  See Riverwoods, 30 F.3d at 344

(employees associating together on behalf of corporation do not form distinct RICO

enterprise); Anemone v. MTA, 410 F. Supp. 2d 255, 271 (S.D.N.Y. 2006) (quoting Nat'l

Cong. for Puerto Rican Rights v. City of N.Y., 75 F. Supp. 2d 154, 168-69 (S.D.N.Y.

1999) ("[U]nder the intracorporate conspiracy doctrine, '[w]here individual defendants

are all employees of the institutional defendant, a claim of conspiracy will not stand.'"));

Sadighi, 36 F. Supp. 2d at 296-98 (discussing application of intracorporate conspiracy

doctrine to RICO context).  The RICO conspiracy claim therefore fails to state a claim.

      Consequently, because the Plaintiffs' remaining claims arise under common

law, they are not entitled to treble damages or attorney's fees.  (See Pl.'s Mem. at 7

(conceding that New York law does not permit a prevailing party to collect attorney's

fees unless otherwise authorized by agreement, statute or rule)).

      2.    Fraudulent Inducement

      Under New York law, rescission is available as a remedy if a party "can

show that it was fraudulently induced to enter into the contract."  Energy Capital Co. v.

Caribbean Trading and Fid. Corp., No. 93 Civ. 8100 (JFK), 1996 WL 157498, at *7

(S.D.N.Y. Apr. 4, 1996).  To state a claim for fraudulent inducement, the party seeking

rescission must show a representation of material fact that was untrue, was known to be

untrue or made with reckless disregard for the truth, and was offered to deceive another or

induce him to act, and that the other party relied on the misrepresentation to its detriment.

Aetna Cas. and Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 580 (2d Cir. 2005).

In that regard, the Plaintiffs allege that in order to induce them to "effect wire transfers to ICS in the amount of $256,354.75," the defendants falsely represented to them that "an investment fund wished to purchase Plaintiffs' properties" and that "ICS was a legitimate escrow agent" (Id. ¶¶ 46, 48). The Plaintiffs further allege that they "justifiably relied" on these representations and suffered money damages as a result. (Id. ¶¶ 47, 49). Finally, they allege that the entire transaction that gave rise to the need to escrow funds was a "fabrication" by the Defendants. (Id. ¶ 1). These allegations are sufficient to plead a prima facie fraudulent inducement claim, thereby entitling the Plaintiffs to unwind the real estate transaction and related escrow arrangement.

C.    Damages

1.    Actual Damages

As a consequence of ICS' fraudulent conduct, the Plaintiffs were induced to wire transfer $231,524 to ICS to secure their obligations with respect to the proposed real estate transaction, plus an additional $24,830.75 as an escrow fee. The Plaintiffs are entitled to the return of both of these sums pursuant to their fraudulent inducement claim. In total, the Plaintiffs therefore are entitled to recover $256,354.75 in actual damages.

2.    Prejudgment Interest

On the assumption that their RICO claims are facially sufficient, the Plaintiffs do not seek prejudgment interest. Indeed, as they correctly note, "where treble damages are adequate to compensate plaintiffs, an award of [such] interest is inappropriate." (Pl.'s Mem. at 6 (citing Bingham v. Zolt, 810 F. Supp. 100, 102

9

(S.D.N.Y. 1993); <u>Nu-Life Const. Corp. v. Bd. of Educ.</u>, 789 F. Supp. 103, 105-06 (E.D.N.Y. 1992))). Although their belief that they may recover treble damages under RICO is mistaken, the Plaintiffs nevertheless are not entitled to prejudgment interest because they failed to request such relief in their Complaint. <u>See</u> Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); <u>Silge v. Merz</u>, 510 F.3d 157, 160 (2d Cir. 2007) ("[T]he conventional additional demand for 'such other and further relief as the Court deems just and proper' does not constitute a demand for prejudgment interest.").

>3. <u>Post-Judgment Interest</u>

The Complaint also fails to seek post-judgment interest. Nevertheless, an award of post-judgment interest on money damages is mandatory in federal court, even when a plaintiff fails to request such relief. <u>Bleecker v. Zetian Systems, Inc.</u>, No. 12 Civ. 2151 (DLC) (SN), 2013 WL 5951162, at *2 (S.D.N.Y. 2013) (citing <u>Westinghouse Credit Corp. v. D'Urso</u>, 371 F.3d 96, 100 (2d Cir. 2004)). Pursuant to 28 U.S.C. § 1961, post-judgment interest is to be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceeding . . . the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, the Plaintiffs are entitled to interest on the amount of judgment at that rate from the date judgment is entered through the date the judgment is fully satisfied.

4.      Costs

Under 28 U.S.C. § 1920, the Court has the discretion to award costs. See Fed. R. Civ. P. 54(d)(1). Here, the Plaintiffs have submitted an itemization of their costs, which reflects $4.00 in copying costs, the $350 statutory filing fee, process service fees in the amount of $151.20, and PACER fees in the amount of $45.00. This last item is described by the Plaintiffs' counsel as their "share of quarterly PACER fees." (Ex. G). Since use of PACER entails a maximum charge of $0.10 per page viewed, (see www.pacer.gov), it is difficult to understand how this estimate of the Plaintiffs' PACER charges could be reasonable. Accordingly, the PACER charges should be disallowed. The remaining items for which recovery is sought are proper. The Plaintiffs consequently should be awarded costs in the amount of $505.20 ($4 + 350 +151.20).

VI.     Conclusion

For the foregoing reasons, I recommend that the Plaintiffs be awarded damages and costs in the amount of $256,859.95, as well as post-judgment interest.

VII.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl, United States District Judge, and to the chambers of the undersigned at the Daniel Patrick Moynihan Courthouse, 500 Pearl

11

Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for

filing objections must be directed to Judge Koeltl.  The failure to file these timely

objections will result in a waiver of those objections for purposes of appeal.  See 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140

(1985).

Dated:      New York, New York
            January 9, 2014


            _____
                   FRANK MAAS
            United States Magistrate Judge


Copies to All Counsel via ECF